**Case No. 14-13900**



U.S. COURT OF APPEALS
RECEIVED
CLERK
NOV 18 2014
ATLANTA, GA

*To be argued by:*
**John Pinson, pro se**

# UNITED STATES COURT OF APPEALS

## for the

## ELEVENTH CIRCUIT

John Pinson

   Plaintiff-Appellant,

v.

Albertelli Law Partners LLC and James E. Albertelli PA

   Defendants-Appellees,

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF FLORIDA

## JOHN PINSON'S
## INITIAL BRIEF

John Pinson, pro se
526 Westwood Road
West Palm Beach, Florida 33401
Tel. 561-329-2524
john@pinson.com

# TABLE OF CONTENTS

Table of Contents                                                        2

Certificate of Interested Persons                                        4

Table of Authorities                                                     5

Preliminary Statement                                                    9

Jurisdictional Statement                                                 9

Statement of the Issues on Appeal                                       10

Statement of the Case and Procedural History                           21

Summary of the Argument                                                 25

Standard of Review                                                      26

Argument                                                                28

  1. The trial court committed error when it granted Defendant's Motion to Dismiss.

    <u>I</u>. The District Court erred by holding that the letters at issue were not communications in connection with the collection of a debt.

      A. Communication Made in Connection With the Collection of any Debt                                                                   30

      B. The communications were related to the collection of a debt. 33

      C. Denying a fact does not make it so; no proof of intentional violation required.                                                      35

D. The August 1 communication in connection with the collection of a debt.                                                     38

E.  The December 24 communications in connection with the collection of a debt.                                        42

F.  Both December 24 communications were attempts to collect a debt.                                                            46

G.  Goodson v Bank of Am is not analogous to the instant case. 47

H.  Parker v Midland is not analogous to the instant case. 49

I.  A genuine issue of material fact exists.                        50

J. FCCPA Claim                                                             53

**II**. The District Court erred by holding that the "animating Purpose" of the letters was not debt collection.                    53

2.  The trial court committed error when it denied grant of leave to amend the complaint.                                           55

Conclusion                                                                 58

Certificate of Compliance                                          59

Statement as to Oral Argument                                 59

Certificate of Service                                                  60

# CERTIFICATE OF INTERESTED PERSONS

## AND CORPORATE DISCLOSURE STATEMENT

Albertelli Law Partners LLC,  Defendant in trial court and Appellee party

Albertelli Law,  law firm of attorney for Appellees

Hopkins, James M.,  U.S. District Court trial judge (Magistrate Judge)

James E. Albertelli PA,  Defendant in trial court and Appellee party

Kelly, Peter W.,  attorney for Appellee in trial court and for Appellee

Kourofsky, Amber Mae,  attorney for Appellee in trial court and for Appellee

Pinson, John,  *pro se*, Plaintiff below and Appellant

Ryskamp, Kenneth L.,  U.S. District Court trial judge (District Judge)

Schulis, Matthew Lee,  attorney for Appellee in trial court and for Appellee

Shaldjian, Rubina K.,   attorney for Appellee in trial court and for Appellee

CIP 1

## TABLE OF AUTHORITIES

**Cases**

Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995) ................................ 54

Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521 (E.D.Pa. 1996) ...... 42

Ashcroft v. Iqbal, 556 U.S., 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................. 25

Ayala v. Dial Adjustment Bureau, Inc., U.S. Dist. LEXIS 30983 (D. Conn. 1986) ................................................................................................................................ 35

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................................................................................ 24

Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC, No. 07 C 4887, 2009 U.S. Dist. LEXIS 26808, 2009 WL 901011, at *7 (N.D. Ill. Mar. 31, 2009) ............. 48

Blair v. Sherman Acquisition, No. 04 Civ. 4718, 2004 WL 2870080, at *2 (N.D.Ill. Dec. 13, 2004) .................................................................................................. 31

Bourff v. Rubin Lublin, LLC, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15, 2012) ................................ 43

Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) ................................ 24

Cavallaro v. Law Office of Shapiro & Kreisman, 933 F.Supp. 1148, 1153 (E.D.N.Y.1996) .................................................................................................. 31

Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162, 1176 (9th Cir. 2006)..................................................................................................................... 54

Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir.1993) ...................................... 37

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)) ... 23, 53

Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ........................ 24

Corazzini v. Litton Loan Servicing LLP, 1:09-cv-199 (MAD/ATB), 2011 U.S. Dist. LEXIS 63565 (N.D.N.Y. June 15, 2011). ...................................................... 49

Creighton v. Emporia Credit Service, Inc., 981 F.Supp. 411, 416 (E.D.Va. 1997) 36

Donohue v. Quick Collect, Inc., 592 F.3d 1027 (9th Cir. 2010); Miller v. Javitch, Block & Rathbone, 561 F.3d 588 (6th Cir. 2009).................................................. 49

Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350 (11th Cir. 2009).......... 28

Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir.2010)......... 35, 55

Elmore v. Mccammon (1986) 640 F. Supp. 905 ...................................................... 7

Estep v. Manley Deas Kochalski, LLC, 2014 WL 185391 (6th Cir. Jan. 16, 2014)9, 27, 39, 52

Exposition Press, Inc. v. FTC, 295 F.2d 869 (2nd Cir.1961)................................... 36

Fed. R. Civ. P. 12(b)(6) ............................................................................... 23

Fed. Trade Comm'n v. Standard Educ. Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82
     L.Ed. 141 (1937) ................................................................................. 37

Flowers v. Accelerated Bureau of Collections, 96 C 4003, 1997 U.S.Dist. LEXIS
     3354, 1997 WL 136313 (N.D.Ill. Mar 19, 1997).................................................. 42

Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 - SD NY (2006) .. 30, 32,
     33

FTC v. Colgate-Palmolive Co., 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904
     (1965) ................................................................................................ 33

Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir. 2010)............... passim

Goodson v. Bank ofAm., NA., 2014 WL 940492 M.D. Tenn. (2014) ............ passim

Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011)12, 38, 51,
     52

Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009) .......... 49

Haines v. Kerner, 404 U.S. 519, 520 (1972)....................................................24, 53

Hamilton v. United Healthcare of Louisiana, Inc., 310 F 385, 392 (5th Cir.
     2002).................................................................................................. 53

Harrison v. Enventure Capital Group, Inc., 666 F. Supp. 473, 479 (W.D.N.Y.
     1987).............................................................................................. 10, 54

Horkey v. J.V.D.B. & Assoc., Inc., 333 F.3d 769 (7th Cir. 2003)........................... 29

Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)...... 24

Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985). ............... 35, 36, 37, 50

Johnson v. Riddle, 305 F. 3d 1107, 1117 (20th Cir. 2002)..................................... 54

LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - 11th Cir. (2010). .......... passim

Luzinski v. Arrow Financial Services, LLC, 05-CV-1322, 2007 U.S. Dist. LEXIS
     71788 (E.D.Wisc. Sept. 26, 2007) ........................................................ 43

Mark v. J. C. Christensen & Assoc., Inc., 09-100, 2009 U.S.Dist. LEXIS 67724,
     *11 (D.Minn. Aug. 4, 2009)................................................................ 48

Nagler v. Admiral Corporation, 248 F.2d 319, 322 (2d Cir. 1957) .................. 10, 54

Nichols v. NIAGARA CREDIT RECOVERY, INC., ND NY (2013)................... 54

O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir. 2002 ............................ 54

Parker v. Midland Credit Management, Inc., 874 F. Supp. 2d 1353 - Dist. Court,
     MD Florida 2012 ............................................................................ 29, 47

Pataula Elec. Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir.). 23

Piper v. Portnoff, 396 F.3d 227, 232 (3d Cir. 2005) ................................................ 26

Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.1989) ............ 31

Romea v. Heiberger & Assocs., 163 F.3d 111, 114 n. 2 (2d Cir.1998) ................. 30

Rosenau v. Unifund Corp., 539 F.3d 218, 224 (3d Cir.2008) ............................... 50

Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2nd Cir.1996) ......................... 34, 36, 42

Ruth v. Triumph P'ships, 577 F.3d 790 (7th Cir. 2009) ................................... 29, 55

Sherar v. Cullen, 481 F. 2d 946 (1973) ..................................................................... 7

Shoup v. McCurdy & Candler, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012) ................................................................................. 43

Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010) ................................................................................................................... 23

Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991) ..................... 10, 54, 55

Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991). ............................. 24

Stricklin v. Jefferson Capital Systems, LLC, SD IL (2011) .............................. 29, 30

Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir.1995) ................. 31

Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ...................................... 24

U.S. v. National Financial Services, Inc., 98 F.3d 131 (4th Cir. 1996) ................. 35

United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996). ............ 37

Wahl v. Midland Credit Management, Inc., 556 F.3d 643, 645-46 (7th Cir. 2009) 49

Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323 (6th Cir. 2012) ........................ 48

Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir.2007) ....................... 25

West v. Nationwide Credit, 998 F.Supp. 642, 644 (W.D.N.C.1998) ..................... 31

## Statutes

15 U.S.C. § 1601 et seq ......................................................................................... 54

15 U.S.C. Section 1692 .................................................................................. passim

F.S. 559.71 ................................................................................................ 7, 19, 55

FTC Act ................................................................................................................ 37

Title 28, Section 1331 ............................................................................................ 7

## Rules

12(b)(6) ................................................................................................................ 54

F.R.C.P. 15(a)(2) .................................................................................................. 10

rule 8(f) ................................................................................................................ 53

## Treatises

The Law (1850) ................................................................................................. 11

## Regulations

Sen.R. No. 95-382, 95th Cong., 1st. Sess., p. 4, reprinted in 1977 USCCAN 1695,
1698. ................................................................................................. 42

## Dictionary

Merriam-Webster's ............................................................................................ 11
Merriam-Webster's Learners dictionary ........................................................... 11
Webster's Ninth New Collegiate Dictionary ..................................................... 32

## Internet

www.fbi.gov ..................................................................................................... 17
www.ireachcontent.com .................................................................................... 17
www.sunbiz.org ....................................................................................... 16, 17, 20

## PRELIMINARY STATEMENT

This is an appeal from an order adopting report of magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice entered by Hon. Kenneth L. Ryskamp of the Southern District US District Court of Florida against appellate, John Pinson, who was the pro se plaintiff in the trial court case below. The operative complaint for purposes of this appeal (Amended Verified Complaint) sought a final judgment for violations of the Fair Debt Collection Practices Act and Florida Consumer Collection Practices Act against collection law firm Albertelli Law Partners LLC and collection law firm, James E. Albertelli PA.

Appellate now seeks review of the order adopting report and recommendation of magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended verified complaint with prejudice, and denying Plaintiff leave to amend.

## JURISDICTIONAL STATEMENT

Appellate cause of action is based on violations of one federal statutes, the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 ( "FDCPA"), and a state court law violation is also included- violation of the Florida Consumer Collection Practices Act. F.S. 559.71. ("FCCPA"). This court of appeal has jurisdiction because the appeal is taken from an order, adopting report of

magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice, of United States District Court on a case brought under and for violation of federal statutes. Title 28, Section 1331 of the United States Code confers upon federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

## STATEMENT OF THE ISSUES ON APPEAL

Your honor, this Appellant doesn't know you, you who are reading this appeal, but you must enjoy reading to have such a job as appellate judge. This Appellant prays you enjoy reading.

This Appellant, John Pinson, is an average American, a consumer as defined by statute, quite normal and natural, and in this court, pro se. This Appellant wants to tell you my story, will you listen? This Appellant feel like he just got the bum's rush in the trial court!

The United States is a great country, and "... the right to file a lawsuit pro se is one of the most important rights under the constitution and laws." Elmore v. Mccammon (1986) 640 F. Supp. 905. "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights." Sherar v. Cullen, 481 F. 2d 946 (1973). Yet, being a pro se plaintiff and exercising constitutional rights, subjectively appears to carry with it a stigma. Funny thing with rights, you learn about them when you exercise them, just like those muscles

only used occasionally, that only rise in your mind clearly and painfully after you over exercise them.

The courtroom is divided by a bar. Only the lawyers can literally pass the bar; courtroom employees enter by other doors. A pro se may enter through the bar, advocating on one's own behalf before a court, rather than being represented by a lawyer, but in order to pass the bar one must endure years of specialized education, take a daunting examination, an if passed, only then to start building a career. No wonder lawyers have such disdain for the pro se litigant.

For the judge who sits at the bench, who studied hard, passed the bar, built a successful career, and earned an honored appointment, what must that judge think of the pro se litigant? Such a judge might visualize a composite of the many pro se who have appeared before. Might a pro se be branded by the composite; a stigma?

Reading pro se cases, one quickly realizes many pro se litigants are incarcerated or are in forma pauperis. In addition, many lack skills in spelling, punctuation, and grammar, not to mention carrying a train of thought. Yet, reading some pleadings drafted by bar licensed attorneys' shows that English language skills might have given way to cut and paste templates. Moreover, documents are now a paste-up of key word search results from Westlaw, and many times the cited cases might work better for the opposition if they only took the time to read them.

In this case, this Appellant bring several issues to this Court on appeal from the trial court.

The clerk made a scanning error missing part of the amended verified complaint he filed, but it was corrected on the docket after a phone call. Before the record was corrected, the defendants filed a renewed motion to dismiss, and the magistrate judge's report and recommendation failed to reference the corrected filing, only the incomplete complaint. This Appellant pointed this out in his objection to the magistrates report, yet it was not mentioned in the order adopting the report. Was the order based on the complete complaint filing? Was the order erroneous?

The primary over reaching issue in this appeal involves the misinterpretation and confusion by the trial court magistrate judge in his fact determination on the "animating purpose" of letters at issue, appended to the complaint from defendants, deeming them not to be communications in connection with the collection of a debt. The magistrate attempts to make a conclusion of law as to the animating purpose of the letters, yet careful review of the cited cases reveals them to be about as analogous as a square peg being inserted in a round hole. Regardless, "The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court." Estep v. Manley Deas Kochalski, LLC, 2014 WL 185391 (6th Cir. Jan. 16, 2014). This Appellant pointed

this out in his objection to the magistrates report, yet it was not mentioned in the order adopting the report. Was the order based on fact finding better put to the jury? Did he get the bums rush?

In his opposition brief to the motion to dismiss, this Appellant asked to deny the motion, or in the alternative for grant of leave to amend, but the report said it would be futile. This was hard to imagine as this Appellant had clearly detailed matters in his opposition brief, 32 pages worth, but the pro se had to cut it down to 20 pages to comply with the rules, by Order. The report did state his suit was not brought without hope of succeeding, and his arguments were not clearly devoid of merit. It has long been "well-established that `outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'" Harrison v. Enventure Capital Group, Inc., 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting Nagler v. Admiral Corporation, 248 F.2d 319, 322 (2d Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991). Moreover, F.R.C.P. 15(a)(2) states a court should give leave to amend freely when justice so requires. This Appellant pointed this out in his objection to the magistrates report, yet it was not mentioned in the order adopting the report. Was the order based on a perceived pro se stigma? Does justice not so require leave to amend in his case? Did he get the bums rush?

So what is the bum's rush? Merriam-Webster's Learners dictionary states: the act of forcing someone to leave a position or place. Merriam-Webster's states: forcible eviction or dismissal. Was he forced to leave his position as pro se Plaintiff? Was he forcibly evicted by the trial court from his position, with prejudice? Frederic Bastiat described court action as use of force in his book The Law (1850). Did he suffer a perceived pro se stigma? Was leave to amend given freely or did justice not so require for this pro se?

The complaint was filed against defendant(s) for violations of the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act. The complaint was verified and this Appellant appended to it fact evidence to support his claims. Included in the appended evidence was a letter received from Chase in response to a qualified written request he had sent to find out who owned a loan.

The Chase letter (Exhibit A) stated the loan was sold into a public security but it did not identify who the security was, the name of the security. He persisted sending letters to find out the name of the owner of the loan and Chase never answered the question who owns the loan. Finally, Chase sent a letter stating it had hired "Albertelli Law" and to direct any inquiries to them, so the Appellant looked up Albertelli Law on the internet and sent them a Demand for Debt Validation letter (Exhibit B) pursuant to FDCPA. We will come back to what he found on the internet later.

This Appellant received a reply communication from Albertelli Law on law firm letterhead (Exhibit C) signed by Andrea Hearn, Litigation Legal Assistant to Joseph Dillon Esq. For the Firm. His first impression was the letter was sent under supervision of an attorney of the firm. Litigation legal assistant to an esquire seemed ominous enough, and a file number was referenced below the address block, and additionally the cc was to "cc: all parties". Parties to what, litigation? What litigation?

This first Albertelli letter said "At this time our office is preparing payoff and reinstatement letters which will include the amounts due to reinstate your loan along with the total amounts due." What were they talking about? The Appellant clearly requested validation, not a payoff letter or a reinstatement letter! They clearly stated "amounts due to reinstate your loan", so were they calling the alleged loan in default? Are they indicating it needed reinstating with an amount due?

"[T]o be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one," and thus "an 'explicit demand for payment' is not always necessary for the statute to apply." Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) (quoting Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir. 2010)).

This first Albertelli letter stated "Chase Loan" at the top of the page. What were they talking about? Chase already indicated in writing that the loan was sold

into a public security, thus Chase did not own the loan. It appears the magistrate misconstrued why the Chase letter was appended to the complaint. The reason this Appellant included the Chase letter (Exhibit A) in the complaint was to show that Chase acknowledged it did not own the debt and had sold the loan. Because Chase stated it did not own the loan, Albertelli appeared to be threatening to take a legal action it was not legally entitled to take on behalf of Chase.

This first Albertelli letter did not state Albertelli was a debt collector or that Albertelli was attempting to collect a debt or that any information obtained could be used for that purpose. Notwithstanding that, the letter stated "please feel free to contact me toll free at (877) 221-4743", apparently to engage the Appellant in a conversation to gain information or discuss the alleged debt. If this Appellant would have called, would he have been informed Albertelli was a debt collector? He did not call then but later found the telephone auto attendant recording states when answered: "Thank you for calling Albertelli Law... a portion of our law practice involves the collection of debts... any information obtained can be used for that purpose!". Why did the letter not state they are a debt collector? Give the number a call and you can hear this!

This first Albertelli letter did not contain any debt collector disclosure and did not contain the statutory required 15 USC 1692g validation rights notice and no 1692g notice was received within 5 days if any initial communication from

Albertelli or at any time thereafter. 1692g appears to require a validation rights notice to be provided within 5 days of any initial communication in connection with the collection of any debt.

To this first Albertelli communication (Exhibit C) this Appellant sent a second Debt Validation letter (Exhibit D), which stated in part "I demand that you provide me with the name and address of the original creditor, the name and address of the current creditor, and a complete validation of the amount of the alleged debt." This is clear, concise, and to the point; he wants to know the name of the current creditor – who any loan was sold to, and who was any original creditor?

The response received from the second Debt Validation letter (Exhibit D) was two separate communications from Albertelli, one a "Payoff Statement" letter (Exhibit E) and the other a "Full Reinstatement" letter (Exhibit E). These did not attempt to provide the complete validation demanded. These did not contain the name and address of the current creditor as demanded. These did not contain the name and address of the original creditor.

What these communications (Exhibit E) on Albertelli Law letterhead contained appeared most disconcerting to this Appellant. They contain the caption "JPMorgan Chase Bank, National Association vs. John D. Pinson", apparently indicating a lawsuit was filed, yet the County records show no such suit being filed

by Albertelli prior to that time or even now! They contain the statement "this is an attempt to collect a debt". How could Chase sue when they indicated they sold the loan into a public security? How could they be a proper party? How could Albertelli appear to threaten to take a legal action that appears could not be legally taken for Chase? These communications appeared to contained instructions for making payment, negative consequences for not making payment, amounts due at a future date, amounts not validated, negative assertions of status and character of an alleged debt. How could these communications not be sent in connection with the collection of any debt?

Back to the information this Appellant found on the internet about Albertelli Law. The letterhead (in Exhibits C & E) lists the following names at the top: James Albertelli, Esq., Robert K Bowen, Esq., and Jonathan D. Sawyer, Esq. A simple search of the Florida Division of Corporations website www.sunbiz.org  for "Albertelli Law" yielded Albertelli Law Partners LLC with members James E. Albertelli, Robert Bowen, and Jonathan Sawyer, which appeared to be a match! This Appellant's complaint named the LLC as defendant, but defendants motion to dismiss alleged this was an improper party. After further research, and noting James E Albertelli PA as registered agent for the first defendant, this Appellant amended his complaint as a matter of course naming the PA as an additional defendant. The renewed motion to dismiss again indicated the LLC was an

improper party, but did not show how. Even the Magistrate judge noted "it is unclear what relationship these two entities have but notable, the two letters at issue in this case were sent by 'Albertelli Law'" in his report. 15 USC 1692(14 ) appears to prohibit the use of "any...name other than the true name of the debt collector's business". A week after Appellant filed his amended verified complaint, documents found www.sunbiz.org  appear to indicate the LLC and PA merged and this Appellant pointed this out in his opposition to the motion to dismiss.

What was more innerving to this Appellant was finding a press release from PRNewswire announcing a new hire, which stated in part "Scott Barnes, who most recently served as Senior Managing Director at Lender Processing Services (LPS)... During his time with LPS, Scott developed, implemented and managed the Default Solutions business." This press release was found at http://www.ireachcontent.com/news-releases/albertelli-law-announces-new-leadership-structure-223629741.html   after a google search. LPS made headlines when its executive, Lorraine Brown, was sentenced to five years in prison for a "scheme to prepare and file more than 1 million fraudulently signed and notarized mortgage-related documents with property recorders' offices", see http://www.fbi.gov/jacksonville/press-releases/2013/former-executive-at-florida-based-lender-processing-services-inc.-sentenced-to-five-years-in-prison-for-role-in-mortgage-related-document-fraud-scheme   for further details. One could only

wonder what skills Barnes brought to Albertelli from LPS, as Albertelli appeared to strive to fill the void left by closures of the foreclosure mills: Marshall C. Watson, P.A. by Florida's attorney general, and closure of David J Stern PA with Stern's disbarment by the Florida Supreme Court.

To the Appellant it appeared something needed to be done. Based on the events which appear contrary to statute, and other information, this Appellant filed his lawsuit. This Appellant appeals these issues: Was his complete amended verified complaint considered by the trial court or just the page deficient filing? Was the magistrate report based on a finding of fact by the trier of law and couched as a conclusion of law, where the fact issue would have better been put to a fact finding jury, with this jury demand complaint? If this Appellant failed to state a claim in his complaint, did he clarified matters in his opposition to the renewed motion to dismiss to the extent that it appears leave to amend should be granted in the interest of justice?

Once this court reviews de novo the unquestionable evidence that these defendants acted towards Plaintiff contrary to federal and state laws, and that the trial court misinterpreted the communications at issue and found fact where the fact issue should have been put to a jury, and that leave to amend would better serve justice, this court should reverse the trial court's grant of dismissal with prejudice.

At a minimum, there exist factual disputes as to the "animating purpose" of the communications appended to the complaint that should be put to a fact finding jury. However, this Appellant submits that there is sufficient evidence in the record to support a ruling by this court that the evidence shows that the defendants violated statute and that by doing so, they injured plaintiff.

In this appeal, Appellant John Pinson, respectfully requests that this court enter a mandate reversing the order adopting the report of magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice, and remanding the case to the district court for further proceedings. Alternatively, if this Court determines Appellant has failed to state a claim, Appellant requests that this court enter a mandate reversing the order adopting the report of magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice, and remanding the case to the district court with instructions to grant leave and sufficient time to amend his complaint.

## STATEMENT OF THE CASE AND PROCEDUARL HISTORY

On January 6, 2014, John Pinson, as plaintiff pro se, filed his verified complaint(DE 01) in the Southern District, US District Court of Florida alleging one count for violation of the Fair Debt Collection Practices Act, FDCPA, and one

count for violation of Florida's consumer statute, Florida Consumer Collection Practices Act, FCCPA, F.S.559.72. Initially the case involved only the defendant Albertelli Law Partners LLC. The Defendant filed various papers with the trial Court but did not serve them upon the pro se, in the US mail, according to the Federal Rules of Civil Procedures and Local Rules of the Southern District, and so the pro se Plaintiff moved for an Order which was Granted Ordering Defendant to serve all notices and papers upon Plaintiff pro se by US Mail at his address listed in Pacer; pro se filers cannot participate in the CM/ECF system.  One of those filings that was not served upon Plaintiff, and thus not received by the pro se, was a motion to dismiss. Upon proper receipt of the motion to dismiss, the pro se Plaintiff amended his verified complaint as a matter of course and added James E Albertelli PA as the second defendant. James E Albertelli PA was added because Albertelli Law Partners LLC complained in it's motion to dismiss that it was an improper party. The communications giving rise to this action were from "Albertelli Law", and a name search on www.sunbiz.org  yields "Albertelli Law Partners LLC", and a Florida Bar search shows simply "Albertelli Law", but after receiving the motion to dismiss and searching www.sunbiz.org  further, Plaintiff identified "James E Albertelli, PA", which occupies the same address as "Albertelli Law Partners LLC". No clarification was ever made by defendants, and the Magistrate judge noted "it is unclear what relationship these two entities have

but notable, the two letters at issue in this case were sent by 'Albertelli Law'". (DE 29 fn.1)    Thereafter, the Defendant filed a renewed motion to dismiss. Upon receiving the renewed motion to dismiss, the Plaintiff found that the trial Court's West Palm Beach Clerk's Office had made an inadvertent scanning error of the pro se Plaintiff's verified amended complaint (DE 19), and the pro se promptly contacted the clerk's office which had the complete hard copy of the verified amended complaint, which was re-scanned and docketed with a Clerk's Notice of Docket Correction (DE 23). The Defendants did not amend their motion to dismiss, which was only based upon the incomplete verified amended complaint (DE 19) filing. The Plaintiff pro se did file a timely response in opposition (DE 25). The trial Court did strike (DE 26) the pro se's Response brief under Local Rule 7.1(c)(2), because it exceeded 20 pages, and the pro se Plaintiff did file a timely amended response in opposition (DE 27) in compliance with the Rules. Thereafter, the Magistrate Judge issued his Report and Recommendation (DE 29) for the District Court to Grant Defendants motion to dismiss and Dismiss Plaintiff's verified amended complaint with prejudice. Throughout the Report and Recommendation reference is only made to the docketed verified amended complaint (DE 19) with missing pages due to clerks scanning error, and no mention is made of the correctly scanned verified amended complaint (DE 23) that appears on the docket, and thus the record shows that Plaintiff pro se's complete

rescanned verified amended complaint (DE 23) was not considered by the Magistrate Judge in his Report and Recommendation (DE 29). The pro se Plaintiff timely filed his Objections (DE 30) to the Report and Recommendation. The Defendant's filed a motion for attorney fees (DE 31). The trial Court issued an Order (DE 32) adopting report of magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice. The fees motion was referred to the Magistrate Judge (DE 33), and the Plaintiff pro se filed his response in opposition (DE 34). The Magistrate Judge files his Report and Recommendation (DE 35) that the District Court Deny the Defendant's motion for sanctions and attorney fees. Plaintiff pro se filed his Notice of Appeal (DE 36). The trial Court issued an Order (DE 40) denying without prejudice the motion for attorney fees, with leave to re-file after the conclusion of the appeal.

For the reasons set forth in this brief, Appellant John Pinson, respectfully requests that this court enter a mandate reversing the order adopting the report of magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended complaint with prejudice, and remanding the case to the district court for further proceedings. Alternatively, if this Court determines Appellant has failed to state a claim, Appellant requests that this court enter a mandate reversing the order adopting the report of magistrate judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended complaint with

prejudice, and remanding the case to the district court with instructions to grant leave and sufficient time to amend his complaint.

## SUMMARY OF THE ARGUMENT

1. The trial court committed error when it granted Defendant's Motion to Dismiss as the ruling granting dismissal with prejudice clearly indicated the trial court based its ruling on a complete misunderstanding of plaintiff's claim and the facts as applied to the controlling law of FDCPA. A *de novo* review of the evidence in the case at the point of defendants motion to dismiss indicates that the court based its ruling on a finding of fact couched as a conclusion of law that the letters at issue sent by defendants were not communications in connection with the collection of a debt. However, because the FDCPA is a strict liability statute, and communications such as the letters at issue can have more than one interpretation under the least sophisticated consumer standard, the fact issue should be put to a trier of fact, a jury in a jury demand complaint, in the interest of justice.

2. The trial court committed error by not granting the plaintiff leave to amend his complaint. The report adopted below did state plaintiff's suit was not brought without hope of succeeding, and his arguments were not clearly devoid of merit. Plaintiff's opposition to the motion to dismiss showed an

amended complaint clearly stating a claim could be drafted, and the district court should have freely granted leave to amend in the interest of justice.

## STANDARD OF REVIEW

## REVIEW OF DISMISSAL OF A COMPLAINT FOR FAILURE TO STATE A CLAIM

The standard of review of a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). A complaint may not be so dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238, 1240 (11th Cir.) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)), cert. denied, 506 U.S. 907, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992). "dismissals for insufficient pleadings are ordinarily with leave to replead." Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991). Although pro se pleadings are construed liberally, a pro se appellant abandons an issue if he fails to raise it in his initial brief. See *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." See Haines v. Kerner, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. See Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. See Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

This court held in *Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010)* as follows:

" II. STANDARD OF REVIEW

A. Pleading Standard Under Twombly and Iqbal

In *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the United States Supreme Court instructed that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46, 78 S.Ct. at 102. In 2007, the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), retired *Conley's* "no set of facts" test in favor of a new formulation of Rule 12(b)(6)'s pleading standard. *Id.* at 562-63, 127 S.Ct. at 1969.

In *Twombly*, the Supreme Court distinguished "plausible" claims from allegations that were merely "conceivable," and stated that the Court "[did] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. The Supreme Court explained that a complaint "does not need detailed factual allegations," but the

allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S.Ct. at 1964-65. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556, 127 S.Ct. at 1965 (quotation marks omitted).

Subsequently, in [*Ashcroft v. Iqbal*, 556 U.S., 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)] the Supreme Court clarified that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949; see also *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir.2007) ("The Court has instructed us that the rule `does not impose a probability requirement at the pleading stage,' but instead `simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965)."

…

## ARGUMENT

1. The trial court committed error when it granted Defendant's Motion to Dismiss.

2. The trial court committed error when it denied grant of leave to amend the complaint.

Determining that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress passed the FDCPA to eliminate those practices. 15 U.S.C. § 1692 (a). The FDCPA

protects (1) consumers (2) who have been subjected to abusive, deceptive or unfair debt collection practices (3) by a debt collector (4) in an attempt to collect a debt. See Piper v. Portnoff, 396 F.3d 227, 232 (3d Cir. 2005) (citing 15 U.S.C. §§ 1692e-f).

The decision below focused on the last prong, ultimately holding that the Albertelli Law  letters at issue were not communications in collection with the collection of a debt because the animating purpose of the letters sent by Defendant to Plaintiff was to respond to Plaintiff's own requests, not to demand payment, and thus was not engaged in collecting a debt within the meaning of § 1692e. See DE 29 pg 6, 9.

The district court applied a fact finding decision couched as a conclusion of law, where a fact finding decision would be better put to the trier of fact, the jury in a jury demand complaint.

"The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court." Estep v. Manley Deas Kochalski, LLC, 2014 WL 185391 (6th Cir. Jan. 16, 2014).

In Jeter we explained that where the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact—not for the court on summary judgment. See Jeter, 760 F.2d at

1176. For these reasons, this issue is one best submitted to the finder of fact. LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - 11th Cir. (2010).

## 1. The trial court committed error when it granted Defendant's Motion to Dismiss.

### I. The District Court erred by holding that the letters at issue were not communications in connection with the collection of a debt.

#### A. Communication Made in Connection With the Collection of any Debt

Certain important substantive prohibitions of the FDCPA apply to "communications." These include §§1692c and several subdivisions of §1692e. A "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. §1692a(2). Usually this takes the form of dunning letters or telephone calls. However, the term is broadly and literally construed to encompass other forms of conveying information as well.

A "communication" need not refer to the debt. For example, a request for financial information for the purpose of restructuring or modifying a loan is a

"communication," even if there is no "explicit demand for payment." Gburek v. Litton Loan Servicing LP, 614 F.3d 380 (7th Cir. 2010).

A voicemail message is a "communication" within the meaning of 15 U.S.C. §§1692d(6) and 1692e, even if it merely requests a return call. Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350 (11th Cir. 2009)

Defendant's sole contention is that the letter are not within the purview of the FDCPA as a matter of law as they are informative in nature; thus, not in violation under the FDCPA or FCCPA. Therefore, defendant argues plaintiff's claims fail as a matter of law as he has not met his threshold burden of demonstrating the communication is within the FDCPA's coverage. However, the relevant inquiry is whether the letter was sent in "relat[ion] to the collection of a debt." See DE 23 ¶ 24.  Thus, the Court must look to relevant Seventh Circuit precedent to determine whether defendant sent the letters "in connection with the collection of any debt."

Neither the Eleventh Circuit nor any other circuit has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt. Most district courts analyzing this issue rely on several decisions from the Seventh Circuit for guidance with respect to the relevant factors. Parker v. Midland Credit Management, Inc., 874 F. Supp. 2d 1353 - Dist. Court, MD Florida 2012.

In Stricklin v. Jefferson Capital Systems, LLC, SD IL (2011),

> [T]he absence of a demand for payment is not dispositive of whether the debt collector made the communication in connection to debt collection. See Horkey v. J.V.D.B. & Assoc., Inc., 333 F.3d 769 (7th Cir. 2003). ... In concluding the FDCPA applied to the phone call, the court looked to its intent. Although the caller made no demand for payment, the debt collector specifically intended the call to induce the debtor to settle her debt; thus, it triggered the FDCPA. Id. at 774.

> The Seventh Circuit further refined the relevant inquiry in Ruth v. Triumph P'ships, 577 F.3d 790 (7th Cir. 2009). ... Ruth illustrates the relationship among the parties is also a factor determinative of whether a communication falls within the scope of the FDCPA. Importantly, Ruth, in reversing and remanding the district court's grant of summary judgment for the debt collector defendants, also clarified the standard for evaluating whether a debt collector made a communication in connection with the collection of debt is an objective one. Therefore, the question is whether an unsophisticated, but reasonable consumer would believe the debt collector sent the communication in connection with the collection of a debt. Id. at 798.

> Most recently, in Gburek v. Litton Loan Servicing LP, 614 F.3d 380 (7th Cir. 2010), the Seventh Circuit stressed again that a demand for payment is not in itself determinative of whether a debt collector made a communication in connection to debt collection. The debtor at issue was in default on her mortgage loan. The loan servicer sent her three letters offering to discuss "foreclosure alternatives" and asking for financial information to initiate this process. In reversing the district court's grant of the loan servicer defendant's motion to dismiss, the Gburek Court determined a loan servicer made numerous communications with a debtor in connection with debt collection, as it intended the communications to cause the debtor to settle or discuss the debt. Id. at 384-86 (citing Horkey, 333 F.3d at 772-74; Ruth, 577 F.3d at 798-99). Thus, the Seventh Circuit has clearly emphasized the relationship of the parties, the intent of the communication, as well as demand for payment, determine whether a communication falls within the scope of the FDCPA.

Stricklin v. Jefferson Capital Systems, LLC, SD IL (2011)

## B. The communications were related to the collection of a debt.

The Plaintiff's amended verified complaint states "The communications in question here are all related to the collection of a consumer debt." [DE 23 ¶ 24].

The aspects of a communication were examined in Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 - SD NY (2006),

> "The FDCPA defines `communication' very broadly as the conveying of information regarding a debt directly or indirectly to any person through any medium.'" Romea v. Heiberger & Assocs., 163 F.3d 111, 114 n. 2 (2d Cir.1998) (quoting 15 U.S.C. § 1692(a)(2)) (holding that notice demanding payment of rent arrearage or surrender of rented premises to landlord was a "communication" within the meaning of the FDCPA). While the Second Circuit has not precisely defined the scope of the term "communication," it has suggested in other contexts that, consistent with Congress's intent in enacting the FDCPA, the statute should be broadly construed. See Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.1989) Mt is apparent that the prescribed requirement can further the Congressional purpose in enacting the FDCPA in 1977, which was to prevent `abusive, deceptive, and unfair debt collection practices.'") (citations omitted) (holding that under the pre-amended version of § 1692e(11), disclosure is required in all communications);[20] see also Cavallaro v. Law Office of Shapiro & Kreisman, 933 F.Supp. 1148, 1153 (E.D.N.Y.1996) ("The Second Circuit also has warned debt collectors against loosely interpreting the FDCPA.") (citing Russell, 74 F.3d at 35); accord Blair v. Sherman Acquisition, No. 04 Civ. 4718, 2004 WL 2870080, at *2 (N.D.Ill. Dec. 13, 2004) ("Because it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose.").
>
> In West v. Nationwide Credit, 998 F.Supp. 642, 644 (W.D.N.C.1998), the … West court noted that "[i]n interpreting the meaning of a statute, it is well settled that `[t]he "plain meaning" of statutory language controls its construction,'" and went on to examine the

dictionary definitions of "regarding." Id. (quoting *657 Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir.1995)). In particular, the court noted: "Webster's Ninth New Collegiate Dictionary (1st ed.1983) defines the term `regard' as, inter alia, `to relate to,' while it provides the following definition of the term `regarding': `with respect to: concerning.'" Id. "Based on these definitions, the court believes the ordinary meaning of the term `regarding' is consistent with the broader interpretation advocated by Plaintiff."

Thus, given the choice of language by Congress, the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected. Indeed, a narrow reading of the term "communication" to exclude instances such as the present case where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold "communication" requirement, merely by not conveying specific information about the debt. ... Such a reading is inconsistent with Congress's intent to protect consumers from "serious and widespread" debt collection abuses.

Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 – SD NY (2006).

The letters at issue sufficiently convey information about a debt to be deemed a "communication," particularly given the Second Circuit's suggestion that the Act should be broadly construed. See Foti

Below, the Appellant asserted fact in his amended verified complaint that "The communications in question here are all related to the collection of a

consumer debt." [DE 23 ¶ 24]. Thus, based on the Foti analysis the letters at issue

are communications related to or regarding, with respect to or concerning a debt.

The court should accept the broad definition which is consistent with Congresses

intent because the letter communications convey, directly or indirectly, information

relating to a debt and therefore are communications in connection with collection

of a debt.

## C. Denying a fact does not make it so; no proof of intentional violation required.

Below, the magistrates report accepted defendant's simplistic and vague

assertion, that essentially by denying the letters at issue were communications

related to the collection of a debt, that the denial makes it so Further, the case law

defendants rely on in Parker is not analogous to the instant matter. Here we can

find instructive the Foti court's analysis.

> Finally, Defendant suggests that its interpretation of "communication"
> is necessary to avoid placing debt collectors in a virtual "Hobson's
> choice"—debt collectors must disclose their identity as a debt
> collector to comply with § 1692e(11)'s requirements, but are
> prohibited from leaving a message identifying themselves as such by
> § 1692c(b)'s prohibition on communications to third parties. (NCO
> Mem. 7) Thus, Defendant argues that "[t]he safest thing to do is to
> recognize what it is. It is not a communication. Once you recognize
> that it is not a communication, then there is no obligation to identify
> that you are a debt collector." (Tr. 8) This argument is unconvincing.

Thus, the alleged "Hobson's Choice" in this case is self-imposed by NCO. It is only because of the method of debt collection selected—calling and leaving the type of pre-recorded messages— that NCO is faced with this potential dilemma. "As the Supreme Court has held in the general context of consumer protection—of which the Fair Debt Collection Practices Act is a part—`it does not seem unfair to require that one who goes deliberately close to an area of proscribed conduct shall take the risk that he may cross the line.'"[26] Russell, 74 F.3d at 35 (quoting *660 FTC v. Colgate-Palmolive Co., 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)) (additional quotations omitted).

Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 – SD NY (2006).

In Foti, the defendant attempts to argue, in essence, that by not acknowledging a communication as a communication, then it is not a communication. The Foti court found the argument unconvincing. This is essentially the same argument of defendant that was adopted below.

The Second Circuit also has warned debt collectors against loosely interpreting the FDCPA. See Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2nd Cir.1996) ("[I]n the general context of consumer protection of which the Fair Debt Collection Practices Act is a part it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.")

Below, Defendants simply argue the letters at issue were not communications in connection with the collection of a debt, and with one case

citation attempt to dispose of the issue as a matter of law. The question of interpretation is actually a matter of fact for the fact finder, since as shown above interpretations can differ among people, sophisticated or not, and thus it is appropriate to apply the least sophisticated consumer standard in matters such as the instant.

Since the purposes of the FDCPA stated in § 1692 included the strengthening of federal protections for consumers, courts should interpret the FDCPA to be at least as protective of consumers as was the FTC Act at the time when the FDCPA was enacted. Thus, the FDCPA's objective standards should be construed to be protective of consumers who are unsophisticated and relatively more susceptible to abuse. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985).

In LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - 11th Cir. (2010), the Court found that the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as the use of "unfair or unconscionable" means of collection. 15 U.S.C. §§ 1692(e) and 1692f. The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute. See 15 U.S.C. § 1692k; Ellis v. Solomon and Solomon, P.C., 591 F.3d 130,

135 (2nd Cir.2010). Thus, a Defendant can be held strictly liable for violations found that are not intentional.

The FDCPA should be construed to accomplish the regulatory goals intended by Congress. Ayala v. Dial Adjustment Bureau, Inc., U.S. Dist. LEXIS 30983 (D. Conn. 1986). Even if not objectively false, any statement which is capable deceiving or misleading violates Section 1692e - Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985). Deception is tested under the standard of the "least sophisticated consumer" - U.S. v. National Financial Services, Inc., 98 F.3d 131 (4th Cir. 1996). A "message that is open to an inaccurate yet reasonable interpretation by the consumer...is...deceptive as a matter law" - Creighton v. Emporia Credit Service, Inc., 981 F.Supp. 411, 416 (E.D.Va. 1997), Russell v. Equifax 74 F.3d 30 (2nd Cir. 1996).

In Jeter we explained that where the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact—not for the court on summary judgment. See Jeter, 760 F.2d at 1176. For these reasons, this issue is one best submitted to the finder of fact. LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - 11th Cir. (2010).

**D. The August 1 communication in connection with the collection of a debt.**

In matters such as the instant, under the FDCPA the least sophisticated consumer standard is applied. This standard has been well established in the 11th Circuit. Notably in LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - 11th Cir. (2010). In LeBlanc, the Court rejected the "reasonable consumer" standard in favor of the "least-sophisticated consumer" standard:

> Because we believe that Congress intended the standard under the FDCPA to be the same as that enunciated in the relevant FTC cases . . . and because we believe that the FDCPA's purpose of protecting consumers is best served by a definition of "deceive" that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters . . ., we adopt the Exposition Press standard of least sophisticated consumer . . . . Jeter, 760 F.2d at 1175; Exposition Press, Inc. v. FTC, 295 F.2d 869 (2nd Cir.1961).
>
> The "least-sophisticated consumer" standard is consistent with basic consumer-protection principles. Jeter, 760 F.2d at 1172-75(internal citations omitted); Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir.1993) ("The basic purpose of the `least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.") As we discussed the FTC Act and its jurisprudence in Jeter, we noted:
>
> That law was not "made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous. . ." and [t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious. Jeter, 760 F.2d at 1172-73 (quoting in part Fed. Trade Comm'n v. Standard Educ. Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141 (1937)); see also Clomon, 988 F.2d at 1318; United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996).

LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - 11th Cir. (2010).

Below, the R & R recommended the August 13 letter is not a communication made in connection with the collection of a debt. It is understandable how a busy District Judge might come to a different conclusion than a pro se or a least sophisticated consumer. Because the letters at issue could be interpreted differently, the court eroded not to put the matter of fact to the trier of fact, the jury.

Considering the content of the August 13 letter, the plaintiff noted the following: The letter is on law firm stationary which is indicates legal involvement; the letter is signed by "Andrea Hearn, Litigation Legal Assistant to Joseph Dillon Esq. For the Firm" indicating attorney involvement to the extent the attorney supervises the issuance of the letter and that he has sufficiently reviewed the file and the letter before directing it be sent and the title Litigation Legal Assistant indicates threat of lawsuit; The letter indicates "Our File Number: 13-115767" indicating a file is already prepared presumably by the litigation department; the letter indicates "cc: All Parties" indicating parties to a lawsuit; The letter uses the terms "amounts to reinstate your loan" and "total amount due" these terms infer a debt is in default and that monies are due. Yet, the letter fails to contain any statutory notice or even an inference that the communication is from a

debt collector, etc. Further, there is no disclosure stating that the communication is not an attempt to collect a debt.

In Goodson v. Bank ofAm., NA., 2014 WL 940492 M.D. Tenn. (2014),

> "Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer." Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 172 (6th Cir. 2011). "The test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." Id.

> "[T]o be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one," and thus "an 'explicit demand for payment' is not always necessary for the statute to apply." Id. at 173 (quoting Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir. 2010)). "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Id.

> "The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court." Estep v. Manley Deas Kochalski, LLC, 2014 WL 185391 (6th Cir. Jan. 16, 2014). Still, where "a reasonable jury could not find that an animating purpose of the statements was to induce payment," summary judgment is appropriate. Grden, 643 F.3d at 172.

> Goodson v. Bank ofAm., NA., 2014 WL 940492 M.D. Tenn. (2014).

Based on the content of the letter it can be reasonably inferred that the letter was a communication in connection with the collection of any debt. Further, based on the relation of the parties, consumer debtor and debt collector, the letter is clearly a communication in connection with the collection of any debt. This fact is

obvious from the perspective of the least sophisticated consumer. The August 1 is a communication in connection with the collection of a debt. Any question should be put to the trier of fact, a jury.

## E.  The December 24 communications in connection with the collection of a debt.

As discussed, the least sophisticated consumer standard should be used to view the December 24 letters. Appellant two letter from Defendants dated December 24. Below, the R & R only makes reference to one letter. As noted previously the clerks office made and corrected a scanning error of Plaintiffs amended verified complaint. The R & R looks to the complaint with missing pages that was replaced [DE 19] not the corrected version [DE 23]. Plaintiff objects to this oversight.

Nevertheless, considering the contents of one of  the two December 24th letters, the Appellant notes the following: The letter is on law firm stationary which is indicates legal involvement; The letter clearly states "this is an attempt to collect a debt'; The letter indicates "Our File Number: 13-115767" indicating a file is already prepared presumably by the litigation department; The letter shows the style of a lawsuit "JPMorgan Chase Bank, National Association vs. John D. Pinson" indicating a legal action and asserting Chase is the owner of the debt and

has granted authority to Defendants to collect; The letter states "the above delinquent loan" making a statement of the status of the debt; the letter states "for the lien to be released" making the representation that a lien had been placed; The letter states "the amount required to cure your loan delinquency is $224,061.56, good through 01/10/2014" indicating a representation of an amount of a debt and a date certain for payment; The letter states: if you are not prepared to tender the full payout amount today, then the amount owed may increase" indicating a negative consequence for Plaintiff for nonpayment; The letter states "please carefully read the following information concerning the foreclosure" the letter states "we may not be able to cancel the the foreclosure sale or other pending hearing" representing the status of a legal action; the letter states "until the loan deficiency is cured" representing the character of the debt; the letter states "quote does not change or extend the foreclosure date" representing a character or legal status of the debt; the letter states "if your payoff amount tendered is less than the total amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process" representing a character or legal status of the debt and containing a negative consequence for Plaintiff for nonpayment of an exacted amount on a specific date; the letter states very specific "payment instructions" including how payment "must be made payable to 'JP Morgan Chase Bank, National Association'" indicating alleged ownership of debt

through entitlement of payment and that any payment is due on a debt; the letter states "funds must be sent to the attorney/trustee office listed on this letter" indicating how a payment must be made on a debt; the letter states "please be advised the action will continue until the total payoff amount is received, in compliance with the terms of this letter" representing a character or legal status of a debt and threatening the negative consequence for Plaintiff of continued legal action unless a specific total amount is paid according to payment instructions; the letter states "in obtaining the withdrawal of a foreclosure" indicating the character or legal status of the debt; the letter states "please reference the file no., case no., and borrower's last name" indicating a debt and referencing the character or legal status of the debt.  The letter fails to contain the statutory FDCPA g notice. The second letter contained similar language and should be considered separately.

One of the most important rights conferred by the FDCPA is the debtor's right to "validation" or "verification" of a debt under § 1692g. "This provision will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." Sen.R. No. 95-382, 95th Cong., 1st. Sess., p. 4, reprinted in 1977 USCCAN 1695, 1698.

Cases hold that any contradiction of the §1692g warnings is a violation, and that it is not necessary to establish a violation that the contradiction be "threatening" or visually overshadow the required notice. Russell v. Equifax

A.R.S., 74 F.3d 30 (2d Cir. 1996); Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521 (E.D.Pa. 1996); Flowers v. Accelerated Bureau of Collections, 96 C 4003, 1997 U.S.Dist. LEXIS 3354, 1997 WL 136313 (N.D.Ill. Mar 19, 1997). In other words, anything that confuses unsophisticated consumers as to their § 1692g rights, is sufficient to violate §1692g.

Appellant demanded to know the current owner of the debt. Defendants persisted to communicate and did not identify the current owner. The present owner of the debt must be identified in a reasonable manner. Luzinski v. Arrow Financial Services, LLC, 05-CV-1322, 2007 U.S. Dist. LEXIS 71788 (E.D.Wisc. Sept. 26, 2007) ("Capital One" acceptable where debt is owned by Capital One Bank and serviced by Capital One Services). Disclosure of a servicing agent or another debt collector instead of the owner of the debt is not sufficient. Bourff v. Rubin Lublin, LLC, No. 10-14618, 674 F.3d 1238; 2012 U.S. App. LEXIS 5613, 2012 WL 971800 (11th Cir. Mar. 15, 2012); Shoup v. McCurdy & Candler, 465 Fed. Appx. 882, 2012 U.S. App. LEXIS 6443 (11th Cir. March 30, 2012).

Based on the content of the letters it can be reasonably inferred that the letter was a communication in connection with the collection of any debt. Further, based on the relation of the parties, consumer debtor and debt collector, the letter is a communication in connection with the collection of any debt. This fact should be

obvious from the perspective of the least sophisticated consumer. Any question should be put to the trier of fact, the jury.

## F.  Both December 24 communications were attempts to collect a debt.

Below, the R & R relies extensively on Goodson v. Bank ofAm., NA., 2014 WL 940492 M.D. Tenn. (2014). Based on the above list where Appellant considers the contents of one of  the two December 24th letters, from the perspective of the least sophisticated consumer the letter could appear as an attempt to collect a debt. In fact the letter explicitly states it is an attempt to collect a debt by a debt collector. Further, the analysis in the R & R is erroneous because based on the Goodson factors and detailed in the above list, the letter clearly suggests "negative consequences that could befall the Plaintiff should he choose not to pay" and does in fact "request a payment" giving very specific payment instructions and does give a payment due date and amount due. From the perspective of the least sophisticated consumer the letter appears as an attempt to collect a debt.

The question of whether the letters are attempts to collect a debt, considered under the least sophisticated consumer standard, are matters of fact and should be put to the trier of fact, the jury, as a conclusion of law is not equitable under the consumer law strict liability standard.

Based on the content of the letters it can be reasonably inferred that the letter was an attempt to collect a debt. Further, based on the relation of the parties, consumer debtor and debt collector, the letter is clearly a communication in connection with the collection of any debt. This fact is from the perspective of the least sophisticated consumer. Any question should be put to the trier of fact, the jury.

### G.  Goodson v Bank of Am is not analogous to the instant case.

Below, the R & R relies extensively on Goodson. The Goodson case was put to summary judgment motion, whereas the R & R below was on motion to dismiss. The issue in Goodson was statute of limitations Discovery; equitable tooling; continuing violation doctrine), whereas in the instant matter parties argue a matter of fact on communications in connection with the collection of any debt. Goodson was dealing with a servicer Bank of America, whereas in the instant matter Plaintiff is dealing with a third party debt collector law firm as Defendants.

Two letters were in question in Goodson. The first Letter in question in Goodson was a notice of change of servicer. The second letter in Goodson was from a law firm attempting to validate the debt in response to Goodson's validation demand letter.

In the instant matter, the R & R takes to question a June 1 letter Plaintiff appended to his complaint. The June 1 letter was appended to evidence Chase stating Chase sold the loan to a public security. The plaintiff included this evidencing Chase did not own any loan and thus could not authorize Defendants to Collect. Plaintiff did not indicate or infer in his complaint that the June 1 letter was sent in connection with the collection of any debt. The court is in err to misconstrue this fact. The letter was sent in response to a qualified written request to identify who owned the loan.

Because Plaintiff persisted in his attempt to determine ownership he was directed to inquire of the Defendants in this matter, and he sent the Defendants a demand for debt validation, and in response the Defendants sent the August 13 letter discussed above. The August 13 letter is clearly a communication in connection with the collection of any debt from the perspective of the least sophisticated consumer. Whereas the second Goodson letter was from a law firm attempting to validate a debt, in the instant matter the August 13 letter was in no way an attempt to Validate and was clearly more than an informative letter. Further, the August 13 letter did not contain the statutory FDCPA g notice of validation rights and a g notice was not sent to Plaintiff within 5 days of the August 13 letter. In fact the Defendants have not alleged they even sent Plaintiff a FDCPA 1692g validation rights letter.

Because the August 13 letter was viewed by Plaintiff as being a communication in connection with the collection of any debt, and threatening in nature, for the reasons detailed above, Plaintiff send a second debt validation letter which included a demand for the name and address of the original creditor, the name and address of the current creditor, and complete validation of the amount of the alleged debt. Despite Plaintiffs specific demand, the Defendants sent two letters which were not attempts to validate and did not include the name and address of the original creditor, the name and address of the current creditor, and complete validation of the amount of the alleged debt. Instead the Defendants send a payoff letter and a reinstatement letter, things the Plaintiff did not ask for and which Plaintiff perceived as a communications in connection with the collection of any debt from the perspective of the least sophisticated consumer and attempts to collect a debt from the perspective of the least sophisticated consumer. Further, the December 24 letters did not contain the statutory FDCPA g notice of validation rights and a g notice was not sent to Plaintiff within 5 days of the December 24 letters. In fact the Defendants have not alleged they even sent Plaintiff a FDCPA 1692g letter.

Below, the trial court eroded to consider Goodson as analogous.

## H.  Parker v Midland is not analogous to the instant case.

Below, Defendant's sole contention was that the letters at issue were not an attempt to collect a debt. Defendants rely on only one case Parker v. Midland Credit Management, Inc., 874 F. Supp. 2d 1353 - MD Fl (2012); Defendants renewed motion to dismiss [DE 22 ¶6].

Appellant contends Parker is not analogous to the instant matter. In Parker, Parker was dealing with Midland Credit Management (a known junk debt buyer who buys defaulted alleged debts), whereas in the instant matter Pinson is dealing with a third party debt collector law firm. Though the Parker case was considered on a motion to dismiss, the Parker case was also a class action.

The letter in question in Parker was required by Florida Statute 559.715 where a party must be noticed in at least 30 days advance of any collection action. Further, the Parker letter in question explicitly stated it was not an attempt to collect a debt and that it was a notice of new ownership and that it stated it was pre attorney review so as not to be threatening. This is not analogous to any of the letters in question in the instant matter.

Because of those above, the Court below eroded in considering Parker as analogous.

## I. A genuine issue of material fact exists.

Whether the letters at issue are communications in connection with the collection of a debt is a fact issue that is material. All conduct specifically prohibited or disclosures specifically required by the FDCPA is "material." Mark v. J. C. Christensen & Assoc., Inc., 09-100, 2009 U.S.Dist. LEXIS 67724, *11 (D.Minn. Aug. 4, 2009). Correct identification of the debt collector and the owner of the debt is "material." Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323 (6th Cir. 2012). "Statements are material if they influence a consumer's decision--to pay a debt in response to a dunning letter, for example, see Muha, 558 F.3d at 628--or if they would impair the consumer's ability to challenge the debt at issue. See Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC, No. 07 C 4887, 2009 U.S. Dist. LEXIS 26808, 2009 WL 901011, at *7 (N.D. Ill. Mar. 31, 2009). Several circuits have imposecd a materiality requirement on false or deceptive statements. Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009); Wahl v. Midland Credit Management, Inc., 556 F.3d 643, 645-46 (7th Cir. 2009); Donohue v. Quick Collect, Inc., 592 F.3d 1027 (9th Cir. 2010); Miller v. Javitch, Block & Rathbone, 561 F.3d 588 (6th Cir. 2009); Corazzini v. Litton Loan Servicing LLP, 1:09-cv-199 (MAD/ATB), 2011 U.S. Dist. LEXIS 63565 (N.D.N.Y. June 15, 2011).

The central issue is the question of if Albertelli communications were made in connection with any debt. Plaintiff contends this is a matter of fact finding, and

not for conclusion of law. In LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 -

11th Cir. (2010),

> A least-sophisticated consumer could read the letter as offering at least two options for responding. Taking the most literal reading, a reasonable juror could find the dunning letter was more informative than threatening and did not threaten imminent legal action.

> However, a reasonable juror applying the "least-sophisticated consumer" standard could also view this letter as either an overt or thinly-veiled threat of suit. (See Summ.J. Order at 19.) Unifund mistakenly relies on the use of conditional language such as "if" and "may" in an effort to safeguard the letter from being construed as "threatening." Despite the conditional language, a reasonable juror could read the dunning letter as intimating that a lawsuit will follow immediately after the end of the 35 day "grace" period. More significantly, in the event of suit, the tone of the letter shifts to more forceful language —"If suit is filed and if judgment is rendered against you, we will collect payment utilizing all methods legally availab le to us . . . ." This portion of the letter supports a reasonable inference that Unifund is threatening LeBlanc with legal action, that it is Unifund's intent to deprive LeBlanc of his personal property. Finally, although not determinative, another hint or suggestion of intimidation is that the letter is sent from Unifund's "Legal Department."[20] See, e.g., Rosenau v. Unifund Corp., 539 F.3d 218, 224 (3d Cir.2008) (analyzing identical language and discussing different inferences that could be drawn from fact that collection letter is sent from "Legal Department," including *1197 inference that an attorney is already 1197 involved).

> In Jeter we explained that where the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact—not for the court on summary judgment. See Jeter, 760 F.2d at 1176. For these reasons, this issue is one best submitted to the finder of fact.

> LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - 11th Cir. (2010).

The letter at issue are communication(s) in connection with the collection of any debt from the perspective of the least sophisticated consumer. Because an issue of material fact exists it should be put to the finder of fact, the jury.

## J. FCCPA Claim

All the above arguments support a FCCPA claim. The additional requirement of FCCPA is that of knowledge or intent to prove a claim. Defendants were on notice of dispute prior to sending any communications to plaintiff. As a law firm, defendant has a duty to investigate prior to making any action or sending communications without first investigating the facts of the matter. Because defendants were on notice of dispute, they had prior knowledge and should have conducted a reasonable investigation.

## II. The District Court erred by holding that the "animating Purpose" of the letters was not debt collection.

Animating purpose was discussed in Grden v. Leikin Ingber & Winters PC, 643 F. 3d 169 - Court of Appeals, 6th Circuit 2011.

> The text of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be "connect[ed]" with one. Thus, we agree with the Seventh Circuit that an "explicit demand for payment" is not always necessary for the statute to apply. Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir.2010). But it is just as clear that "the statute does not apply to

every communication between a debt collector and a debtor." Id. at 384-85 (emphasis in original). So the question is where to draw the line.

We draw it at the same place the Seventh Circuit did in Gburek: for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor. See id. at 385 ("a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections" of the Act). Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment. See, e.g., id. at 386 (third-party letter directing debtor to contact creditor was sent in connection with collection of a debt). Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make a such an attempt more likely to succeed, is one that has the requisite connection.

Here, on one hand, the balance statements obviously came from a debt collector—indeed from one that had already sued Grden—and they stated a balance "due." On the other hand, the statements themselves did not demand payment or threaten any consequences if Grden did not pay. But for us the decisive point is that Leikin made the balance statements only after Grden called and asked for them. The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely. See Gburek, 614 F.3d at 384 (letter that was "merely a description of the current status of the debtor's account" did not have the requisite connection). Thus, under the circumstances present here, a reasonable jury could not find that an animating purpose of the statements was to induce payment by Grden. We therefore affirm the district court's grant of summary judgment as to those statements.

Grden v. Leikin Ingber & Winters PC, 643 F. 3d 169 - 6th Cir. (2011).

As discussed above, and is incorporated herein by reference, the animating purpose of the letters was to induce payment, make payment more likely, or cause Appellant to contact debt collector.

"The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court." Estep v. Manley Deas Kochalski, LLC, 2014 WL 185391 (6th Cir. Jan. 16, 2014)

Considering the preceding arguments applied to the instant matter, the animating purpose of the letters was an attempt to collect a debt from the perspective of the least sophisticated consumer and thus the animating purpose was to induce payment, make payment more likely, or contact the debt collector. Any question should be put to the fact finder, the jury.

## 2. The trial court committed error when it denied grant of leave to amend the complaint.

Below, the Plaintiff has argued his complaint contained sufficient facts to state a claim and did argue in his opposition against the Defendants assertion that the letters in question were not communications in connection with the collection of a debt. Further, the Plaintiff has re-alleged herein in his Statement of Facts sufficient facts which are uncontroverted to state a claim. "Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which

we hold to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519 (1972). "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. Conley v. Gibson, 355 U.S. 41 at 48 (1957). The FDCPA is a remedial statute. Hamilton v. United Healthcare of Louisiana, Inc., 310 F 3d 385, 392 (5th Cir. 2002). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107, 1117 (20th Cir. 2002).

In Nichols v. NIAGARA CREDIT RECOVERY, INC., ND NY (2013), the Plaintiff is faced with a 12(b)(6) motion to dismiss, just as in the instant matter. In Nichols,

> It has long been "well-established that `outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'" Harrison v. Enventure Capital Group, Inc., 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting Nagler v. Admiral Corporation, 248 F.2d

319, 322 (2d Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so. See O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir. 2002) (citing Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995)). Nichols

In the present matter, the Court finds that it is not clear at this point whether amendment would be futile; and, therefore, Plaintiffs will be afforded an opportunity to amend their complaint. Plaintiffs shall have twenty (20) days from the date of this Memorandum-Decision and Order to file their amended complaint.

Nichols v. NIAGARA CREDIT RECOVERY, INC., ND NY (2013).

In LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010, the Court found the FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute. See 15 U.S.C. § 1692k; Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir.2010).

Appellant pled sufficient uncontroverted facts to state a claim for relief to be granted, and has appended uncontroverted fact evidence supporting his contention of violations of the FDCPA and FCCPA. Because of the liberal consumer protection nature of the statutes, and the intent of Congress to protect consumers, it is in the best interest of justice to allow the Appellant to amend his complaint if this court deems he has failed to state a claim for relief to be granted.

"[D]ismissals for insufficient pleadings are ordinarily with leave to replead." Stern

v. General Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991).

The FDCPA is a strict liability statute, and debt collectors whose conduct

fails short of its requirements are liable here respective of their intentions. Ruth v.

Triumph P'ships, 577 F.3d 790 (7th Cir. 2009). Because of the liberal consumer

protection nature of the FDCPA and the lesser pleading standards applied to pro se

litigants, and given the fact the pro se corrected deficiencies in his amendment as a

matter of course, without the Courts comments on any deficiencies, and in the

interest of justice, this Court should grant leave to amend.

## CONCLUSION

Appellant John Pinson, respectfully requests that this court enter a mandate

reversing the order adopting the report of magistrate judge, granting Defendant's

motion to dismiss and dismissing Plaintiff's amended complaint with prejudice,

and remanding the case to the district court for further proceedings. Alternatively,

if this Court determines Appellant has failed to state a claim, Appellant requests

that this court enter a mandate reversing the order adopting the report of magistrate

judge, granting Defendant's motion to dismiss and dismissing Plaintiff's amended

complaint with prejudice, and remanding the case to the district court with

instructions to grant leave and sufficient time to amend his complaint.

Dated: November 13, 2014

John Pinson, *pro se*, Appellant
526 Westwood Road
West Palm Beach, Florida 33401
Tel. 561-329-2524
john@pinson.com

## CERTIFICATE OF COMPLIANCE 32a

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

1. This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because:
   A. this brief contains 12,754 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii), or
   B. this brief uses a monospaced typeface and contains 1166 lines of text, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).
2. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using MS Word version 14.0.7218.5000  in 14 point size Times New Roman style.

Dated: November 13, 2014

John Pinson, *pro se* Appellant

## Statement as to Oral Argument

Due to the national impact and the impact on the entire collections industry and consumer integrity of the ruling on this case Appellant will make himself available if this Court deems necessary.

Dated: November 13, 2014

John Pinson, *pro se* Appellant

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Certificate of Interested Parties and Corporate Disclosure Statement was filed with the Clerk of the U.S. Court of Appeals, and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, and an additional a true and correct copy with first-class postage prepaid, has been deposited in the U.S. Mail.

## Service List

| | |
|---|---|
| Rubina K. Shaldjian, Esq. | Matthew L. Schulis, Esq. |
| rshaldjian@albertellilaw.com | mschulis@albertellilaw.com |
| Albertelli Law | Albertelli Law |
| P.O. Box 23028 | P.O. Box 23028 |
| Tampa, FL 33623 | Tampa, FL 33623 |
| Tel. 813-221-4743 x1508 | Tel: 813-221-4743x 2621 |
| Fax. 813-221-9171 | Fax: 813-221-9171 |
| Attorney for Appellee: | Attorney for Appellee: |
| Albertelli Law Partners LLC | James E Albertelli PA |

Dated: November 13, 2014

_____

John Pinson, *pro se* Appellant